IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CASE NO.  8:05CR245 |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | MEMORANDUM |
| | ) | AND ORDER |
| CHARLES E. WIIG, | ) | |
| | ) | |
| Defendant. | ) | |

This matter is before the Court on the Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody (Filing No. 71) filed by the Defendant, Charles E. Wiig.  Rule 4(b) of the *Rules Governing Section 2255 Proceedings for the United States District Courts* requires initial review of a § 2255 motion, and describes the initial review process:

> The judge who receives the motion must promptly examine it. If it plainly appears from the motion, any attached exhibits, and the record of prior proceedings that the moving party is not entitled to relief, the judge must dismiss the motion and direct the clerk to notify the moving party. If the motion is not dismissed, the judge must order the United States attorney to file an answer, motion, or other response within a fixed time, or to take other action the judge may order.

**FACTUAL BACKGROUND**

Wiig was found guilty after a two-day jury trial of Count I of the Indictment charging him with distributing less than 5 grams of a mixture or substance containing a detectable amount of methamphetamine pursuant to 21 U.S.C. §§ 841(a)(1) and (b)(1).  (Filing No. 13.)  Count II of the Indictment was dismissed.  (Filing No. 42.)  The Defendant's motion for new trial and supporting brief were filed out of time; however, the Court granted leave for the late filing.  (Filing Nos. 22, 23, 24, 26.)

After trial, Wiig moved for the withdrawal of his trial counsel, Shannon P. O'Connor, Assistant Federal Public Defender. (Filing No. 27.) The Court reluctantly granted the motion and Mark A. Weber was appointed for purposes of sentencing and appeal. (Filing No. 31.) According to the PSR, Wiig was a career offender and in a sentencing guideline range of 262-327 months based on total offense level 34 and placement in criminal history category VI. Weber objected to the PSR, and the objections were granted. However, the guideline range remained unaffected. (Filing No. 37, Filing No. 56 (Sentencing TR), at 256.) At sentencing, Wiig asked for a continuance of the hearing to allow for the Court's receipt of two character references. The Court denied the motion to continue, stating: "Letters of recommendation may be of interest, but frankly, a letter of recommendation is not going to make a difference in how the defendant is sentenced in this particular case." (Filing No. 56, at 259.)

Wiig was sentenced to the low end of the guideline range at 262 months imprisonment and 6 years supervised release. (Filing No. 42.) He filed a direct appeal. (Filing No. 44.) The issues raised on appeal were sufficiency of the evidence and the reasonableness of the sentence. The Eighth Circuit, in a per curiam opinion, affirmed Wiig's conviction and sentence. (Filing Nos. 61, 65.)

Wiig filed a brief in support of a motion for relief under 28 U.S.C. § 2255; however, he did not file a motion. (Filing No. 71.) In light of Wiig's previous filings and the approaching deadline for the filing of a § 2255 motion, the Court construed the brief as Wiig's § 2255 motion. Wiig's subsequent letter was filed as a supplement to his motion. (Filing No. 78.) In his § 2255 motion, Wiig raises the following issues: actual innocence; denial of his Sixth Amendment right to cross examine confidential informant George Brown,

whose alleged statement was introduced through Investigator Haseloh; ineffective assistance of trial counsel; ineffective assistance of appellate counsel; the Assistant United States Attorney's violation of Federal Rule of Evidence 804(a)(5) and the Sixth Amendment Confrontation Clause; and prosecutorial misconduct on the part of Assistant United States Attorney ("AUSA") Kim Bunjer.

**ACTUAL INNOCENCE**

At trial, the Defendant's mother, Mary McIntosh, testified that an audio recording of a controlled buy played at trial "sounds like" Wiig. (Filing No. 54, at 176:18.) Wiig attached to his § 2255 motion an affidavit of Mary McIntosh, sworn on April 19, 2007, which states:

> I, Mary McIntosh would like to explain in depth an incident that occured [sic] July 20, 2005, in Douglas County NE at my sons [sic] trial, Charles Wiig. I was questioned about a voice on a recording which I said it sounds like Chuck. I did not say I thought it was Chuck and I wasn't asked if it could be his roommates' or anyone elses [sic] voice.
>
> The prosecutor had told me the evening before that she could give my son time for obstruction of justice even if he wins at trial which I found to be false afterwards. Then before I took the stand the prosecutor played the tape for me and my husband. The first time the prosecutor played the tape I told her I couldn't understand what was being said and the tape had so much static in it I couldn't tell who it was. Then she played it again. [I]t still had a lot of static but then I said it sounded like maybe it could be. But I don't know for it could be his roommate or even some other friend of Chuck's, for all I know.

(Filing No. 71, at 84.)

In his § 2255 motion, Wiig argues that McIntosh's affidavit shows that he is actually innocent of the charged crime.

The Eighth Circuit Court of Appeals has stated that "[a]n actual innocence claim is 'not itself a constitutional claim, but instead a gateway through which a habeas petitioner must pass to have his otherwise barred constitutional claim considered on the merits.'"

3

*Wadlington v. United States,* 428 F.3d 779, 783 (8th Cir. 2005) (quoting *Schlup v. Delo,* 513 U.S. 298, 315 (1995)).  In order to establish a claim of actual innocence, a defendant must "'support his allegations of constitutional error with new reliable evidence . . . that was not presented at trial,'" and demonstrate "'it is more likely than not that no reasonable juror would have convicted him in the light of the new evidence.'" *Id.* (quoting *Schlup,* 513 U.S. at 324, 327).  The Eighth Circuit has determined that "[t]his standard is strict; [and] a party generally cannot demonstrate actual innocence where there is sufficient evidence to support a conviction." *Id.*

Applying these principles to Wiig's case, he seeks to prove his actual innocence through an affidavit recanting McIntosh's trial testimony that the voice on the audio recording in questions "sounds like" Wiig.  The trial testimony was equivocal, and so is the affidavit.  The affidavit does not disprove the trial testimony.  Even if the affidavit were radically different from the trial testimony, recantations of testimony under oath are not viewed favorably.  *Id.* at 784.  Wiig's case is factually similar to the *Wadlington* case, in which the Eighth Circuit concluded that the affidavit in question would not be viewed credibly as a recantation, and in fact the affidavit did not contradict the trial testimony.  In *Wadlington,* the Eighth Circuit affirmed the district court and concluded that an evidentiary hearing was not warranted on the issue of actual innocence, finding that the submitted affidavits did not "extinguish the abundance of evidence" implicating the defendant of the charged crime.  *Id.*  Similarly, numerous pieces of evidence other than McIntosh's testimony support the jury's verdict.

For these reasons, an evidentiary hearing will not be had and the actual innocence claim is denied.

**SIXTH AMENDMENT RIGHT TO CROSS EXAMINE CI**

At trial, Investigator Haseloh testified that the controlled buy involving the confidential informant ("CI") George Brown took place at Wiig's residence. Investigator Haseloh stated that he did not see Wiig. However, he testified numerous times that he heard Wiig's voice on the audio recording of the buy together with Brown's. (Filing No. 53, at 81, 84, 85, 122.)

Wiig argues that he was denied his Sixth Amendment right to cross examine the CI when the CI's written statement supporting Investigator Haseloh's testimony was admitted into evidence.

The Sixth Amendment provides that, "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him." U.S. CONST. AMEND. VI. The Confrontation Clause only applies to testimonial hearsay. *Davis v. Washington,* 126 S. Ct. 2266, 2273-74 (2006). Testimonial evidence is admissible only if the declarant is unavailable and the defendant had a prior opportunity for cross-examination. *Crawford v. Washington,* 541 U.S. 36, 68 (2004).

Contrary to Wiig's assertion, a review of the trial exhibit list shows that a written statement of Brown was neither offered nor admitted into evidence. (Filing No. 12.) Therefore, it appears that Wiig challenges Haseloh's testimony concerning Brown. An investigating officer's testimony concerning a CI may be "introduced for the limited purpose of explaining the course of the police investigation." *United States v. Armstrong,* No. 05-518, 2007 WL 4386489, at *4 (4th Cir. Dec. 13, 2007). Such testimony is not "testimonial hearsay" to which *Crawford* applies. *Id.*

For the reasons discussed, Wiig's Sixth Amendment claim is denied.

**INEFFECTIVE ASSISTANCE OF TRIAL COUNSEL**

Wiig alleges that trial counsel, Shannon P. O'Connor, was ineffective in the following ways: failing to challenge the entry of Brown's written statement; failing to move for a mistrial based on prosecutorial misconduct due to the AUSA's failure to subpoena Brown; failure to move in limine to prevent the use of "testimonial hearsay" with respect to Brown; communicating prior to trial with government witness Mary McIntosh; failing to take certain measures in connection with Wiig's motion for new trial.

In order to establish ineffective assistance of counsel, Wiig must satisfy both prongs of the test articulated by the United States Supreme Court in *Strickland v. Washington*, 466 U.S. 668 (1984). The performance prong requires a showing that counsel performed outside the wide range of reasonable professional assistance and made errors so serious that counsel failed to function as the kind of counsel guaranteed by the Sixth Amendment. *Id.* at 687-89. The prejudice prong requires a movant to demonstrate that seriously deficient performance of counsel prejudiced the defense. *Id.* at 687.

*CI Brown*

For the reasons discussed earlier regarding the issues surrounding Investigator Haseloh's testimony with respect to the controlled buy involving CI Brown, Wiig cannot satisfy either prong of the *Strickland* test with respect to the issues relating to CI Brown.

*Pretrial Communication With Mary McIntosh*

Wiig objected to trial counsel interviewing government witness Mary McIntosh. Contrary to Wiig's argument, counsel's zealousness in interviewing a prospective witness is a factor indicating counsel's effective representation. *See Lindhorst v. United States,* 658 F.2d 598, 604 (8th Cir. 1981) (stating that "[u]nder some circumstances a failure to

interview prospective witnesses may be a breach of the duty to act as a reasonably competent attorney"). Wiig argues that trial counsel's conversation with McIntosh was inappropriate. McIntosh stated in her affidavit that counsel told her prior to trial:

> that everyone that listened to the tape could tell that it was [Wiig]. He also told me he had no defense for my son, that his case was not winnable and that he should take the plea bargain. With him saying all that he made me think my son was guilty, making me believe that I would be arrested if I didn't say it was my son.

(Filing No. 171, at 84.)

Additionally, in a filing considered as a supplement to Wiig's motion, he argues that trial counsel refused Wiig's request at trial to ask McIntosh on cross examination whether the voice on the recording sounded more like him or "Mike/Miquel" and that trial counsel encouraged McIntosh to testify. (Filing No. 78.)

The Court first notes that counsel, not the defendant, decides which questions to ask on cross-examination. Had trial counsel posed Wiig's desired question to McIntosh, her answer might have incriminated him further. Moreover, assuming the veracity of these assertions for the sake of argument, Wiig is unable to demonstrate any prejudice resulting therefrom. McIntosh testified that the voice in question on the audio recording "sounds like" Wiig. In addition to McIntosh's testimony, the Court heard Investigator Haseloh unequivocally and repeatedly refer to the voice on the tape as Wiig's.

For these reasons, because Wiig cannot demonstrate the prejudice prong of the *Strickland* test, the claim is denied.

### INEFFECTIVE ASSISTANCE OF SENTENCING AND APPELLATE COUNSEL

Wiig alleges that trial counsel, Mark A. Weber, was ineffective in failing to: communicate with Wiig prior to sentencing; write a technically suitable appellate brief; file

7

a reply brief on appeal; and raise all non-frivolous issues on appeal, including all contrary evidentiary rulings.

*Sentencing*

Initially, the Court notes that Mr. Weber was appointed when the magistrate judge reluctantly granted Mr. O'Connor's motion to withdraw. (Filing No. 55.) The motion to withdraw was filed at Wiig's request. Therefore, it was Wiig's choice to proceed to sentencing and on appeal with new counsel who was not present for trial.

At sentencing, the Court asked counsel whether he had received the Second Revised PSR and tentative findings and discussed them with Wiig. Mr. Weber replied that he had done so, without objection by Wiig. (Filing No. 56, at 254.) Therefore, the record reflects that counsel and Wiig communicated sufficiently prior to sentencing. The Court also notes that Mr. Weber objected to the PSR. Although the guideline range was unaffected, the objections were granted based on the parties' stipulation. (Filing No. 56, at 256-57.)

*Appeal*

Wiig's argument that Mr. Weber cited no case law in support of the insufficiency of the evidence argument is incorrect. Brief of Appellant, United States v. Wiig, 190 Fed. Appx. 521 (8th Cir. 2006) (No. 05-4184), 2005 WL 3675768, at ** 8-9. Wiig is also mistaken in arguing that counsel's statement in the brief that Wiig's crime of conviction is not a crime of violence is mistaken. *Id.* at * 12; § 4B1.2(a)(2) (defining a crime of violence as an offense that "otherwise involves conduct that presents a serious potential risk of physical injury to another"). Contrary to Wiig's assertion, the government filed a responsive brief on February 14, 2006. Mr. Weber did not file a reply brief; however, reply briefs are

8

not required and in fact are not favored. (Filing No. 50.) With respect to the choice of issues on appeal, the Eighth Circuit has stated:

> Because one of appellate counsel's important duties is to focus on those arguments that are most likely to succeed, counsel will not be held to be ineffective for failure to raise every conceivable issue. "Generally, only when ignored issues are clearly stronger than those presented, will the presumption of effective assistance of counsel be overcome." *Smith*, 528 U.S. at 288, 120 S. Ct. 746 (quoting *Gray v. Greer,* 800 F.2d 644, 646 (7th Cir.1986)).

*Link v. Luebbers,* 469 F.3d 1197, 1205 (8th Cir. 2006), *cert. denied,* 128 S. Ct. 488 (2007).

Mr. Weber competently raised two issues on appeal, which action supports the conclusion that his representation was zealous and effective. Effective counsel would not raise all non-frivolous issues or all contrary evidentiary rulings.

For the reasons discussed, this claim is denied.

### *AUSA's Alleged Violation of Fed. R. Evid. 804(a)(5) and the Confrontation Clause and Prosecutorial Misconduct*

Wiig again argues the issue relating to the CI, George Brown. These claims are denied for the reasons previously discussed.

## CONCLUSION

For the reasons discussed, after careful consideration Wiig's § 2255 motion is denied.

IT IS ORDERED:

1. The Court has completed the initial review of the Defendant's Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody ("§ 2255 motion") (Filing Nos. 71, 78);

2. Upon initial review, the Court summarily dismisses the Defendant's claims raised in the § 2255 motion;

3. A separate Judgment will be issued denying the § 2255 motion;

4. The Clerk is directed to send Shannon P. O'Connor, First Assistant Federal Public Defender, notice of this Memorandum and Order; and

5. The Clerk is directed to mail a copy of this Memorandum and Order to the Defendant at his last known address.

DATED this 14th day of January, 2008.

BY THE COURT:

s/Laurie Smith Camp
United States District Judge