IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    Plaintiff,<br><br>v.<br><br>CHARLES E. WIIG<br><br>    Defendant. | 8:05CR245<br><br>MEMORANDUM<br>AND ORDER |

This matter is before the Court on defendant Charles E. Wiig's ("Wiig") Motion for Compassionate Release (Filing No. 153). The motion seeks compassionate release pursuant to 18 U.S.C. § 3582(c)(1)(A) as amended by the First Step Act of 2018 ("First Step Act"), Pub. L. No. 115-391, 132 Stat. 5194 (2018). For the reasons stated below, Wiig's motion is denied.

**I.   BACKGROUND**

On June 22, 2005, a federal grand jury indicted (Filing No. 1) Wiig for distributing less than 50 grams of a mixture of methamphetamine in violation of 21 U.S.C. 84l(a)(l) and 21 U.S.C. 841 (b)(l) (Count I), and for failing to appear in violation of 18 U.S.C. 3146(a)(1) (Count II). The government voluntarily dismissed Count II. A jury convicted Wiig on Count I.

The Probation Office's Second Revised Presentence Investigation Report ("RPSR") placed Wiig at a base offense level of 18. The RPSR noted that in 1999, Wiig was indicted for drug charges in Case No. 8:98CR231. Wiig was released on bond but absconded on March 2, 1999. Wiig thereafter lived under his brother's name and was not caught until April 19, 2005. Based on this conduct, Wiig received a two-level enhancement for obstruction of justice.

The RPSR also designated Wiig as a career offender based on two prior felony convictions. One conviction for burglary and another for distribution of

methamphetamine. With the career-offender designation, the RPSR placed Wiig at a total offense level 34 and a criminal history category VI, resulting in a recommended sentencing range of 262 to 327 months. Wiig objected to the RPSR, alleging his criminal history had been miscalculated. On November 14, 2005, the Court denied Wiig's objections in part. On November 17, 2005, the Court sentenced Wiig to 262 months of imprisonment followed by six years of supervised release.

Wiig appealed (Filing No. 44) the sufficiency of the evidence and the reasonableness of his sentence. The United States Court of Appeals for the Eighth Circuit affirmed his conviction and sentence (Filing No. 61); *see also United States v. Wiig*, 190 Fed. Appx. 521 (8th Cir. 2006). The Eighth Circuit specifically concluded, "given Wiig's status as a career offender and his six-year flight from the law, we cannot say that he has rebutted the presumption that his guideline sentence is reasonable." *Id.*

Wiig has filed several post-conviction pleadings under 28 U.S.C. § 2255, the first of which was denied on the merits and the others as second and successive. The Eighth Circuit has not granted any of his appeals or permitted successive petitions to proceed.[1] Wiig now files this motion for compassionate release under § 3582(c)(1)(A) as amended by the First Step Act. Wiig alleges he is entitled to compassionate release because his sentence is greater than necessary to achieve the goals of sentencing under § 3553(a). Specifically, he argues extraordinary and compelling reasons warrant a reduction in his sentence because of the combination of the First Step Act and "other law" would put his sentencing guideline range at 70 to 87 months. Wiig argues there is an unreasonable disparity between his 262-month sentence and what other similarly situated defendants would currently receive.[2]

---

[1] *See* Filing Nos. 61, 71, 90, 110, 114, 120, 124, and 146.
[2] Wiig also argues broadly that the COVID-19 pandemic creates further adverse impacts to his incarceration. Wiig does not provide further evidence or argument that he is particularly susceptible to serious illness if he contracts COVID-19 or any other specific reason that the pandemic justifies compassionate release. Accordingly, the Court has not considered compassionate release on that basis.

## II. DISCUSSION

### A. Compassionate Release Standard

As amended by the First Step Act, § 3582(c)(1)(A)(i) permits Wiig to move for a sentence reduction after he "has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons [("BOP")] to bring a motion on [his] behalf or the lapse of 30 days from the receipt of such a request by the warden of [his] facility, whichever is earlier." Wiig submitted evidence that he made a request to his warden seeking sentence reduction and compassionate release, which was denied on December 31, 2020. More than thirty days have passed since that date. Accordingly, the Court considers whether Wiig has demonstrated extraordinary and compelling reasons to release him under the circumstances of this case.

In deciding whether to grant a reduction, the Court must consider the relevant factors set out in 18 U.S.C. § 3553(a), including the nature and circumstances of the offenses of conviction; the defendant's history and characteristics; and the need for the sentence to reflect the seriousness of the crime, to promote respect for the law, and to provide just punishment for the offense. A defendant's sentence should also deter criminal conduct, protect the public from future crime by the defendant, and promote rehabilitation. *Id*.

The Court also considers whether the defendant presents "a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)," U.S.S.G. § 1B1.13(2), and must ensure any relief is "consistent with applicable policy statements issued by the [United States] Sentencing Commission," 18 U.S.C. § 3582(c)(1)(A). The first application note to § 1B1.13[3] lists four general categories of qualifying circumstances: (1) the defendant's terminal illness or other serious medical condition; (2) the defendant's

---

[3]This policy statement predates the First Step Act and therefore does not govern the Court's review of Wiig's request for a sentence reduction. The Court nonetheless finds it helpful in deciding whether to reduce his sentence. *See United States v. Jenkins*, No. 4:15-CR-3079, 2020 WL 2814437, at *3 (D. Neb. May 26, 2020).

3

advanced age and deteriorating health; (3) dire family circumstances; and (4) other "extraordinary and compelling" reasons as determined by the BOP Director. U.S.S.G. § 1B1.13 cmt. n.1.

### B. Changes to the Law

Wiig's justification for compassionate release is based primarily on changes to the law that are either not retroactive or not directly applicable to Wiig. He argues that his sentence would be significantly shorter today because he would no longer qualify as a career offender under the current United States Sentencing Guidelines ("U.S.S.G." or "Guidelines"). To qualify as a career offender under the Guidelines, a defendant must have "at least two prior felony convictions of either a crime of violence or a controlled substance offense." U.S.S.G. § 4B1.1. At the time Wiig was sentenced, the Guidelines' definition of "crime of violence" included any offense that "is burglary of a dwelling, arson, or extortion, involves use of explosives, or otherwise involves conduct that presents a serious potential risk of physical injury to another."[4] U.S.S.G. § 4B1.2(a)(2) (2005).

#### 1. Asserted Changes to U.S.S.G. § 4B1.2(a)(2)

Wiig argues that because of changes to § 4B1.2(a)(2) by amendment and interpretive caselaw, his burglary conviction would no longer qualify as a predicate offense, and he would not be considered a career offender. However, none of the changes to the law are retroactively applicable to Wiig. Wiig first seems to argue that Amendment 798 to the Guidelines would have resulted in a shorter sentence. Amendment 798 eliminated "burglary of a dwelling" from the enumerated offenses clause of § 4B1.2(a)(2) and eliminated the residual clause altogether. U.S.S.G. Manual app. C, amend. 798 (U.S. Sentencing Comm'n Supp. Nov. 1, 2016). However, because Wiig was sentenced prior to the effective date of Amendment 798 (August 1, 2016), a sentence reduction pursuant to

---

[4]The listed offenses in § 4B1.2(a)(2) were known as the "enumerated offenses clause," and the remaining words were known as the "residual clause." *See United States v. Beck*, No. 8:13CR62, 2016 WL 3676191, at *2 (D. Neb. July 6, 2016).

the amendment is only available if the Court applies the amendment retroactively. *See* U.S.S.G. §§ 1B1.10(a)(1); *Dillon v. United States*, 560 U.S. 817, 821 (2010) (noting that "[w]hen the [Sentencing] Commission makes a Guidelines amendment retroactive, 18 U.S.C. § 3582(c)(2) authorizes a court to reduce an otherwise final sentence that is based on the amended provision."). This Court has previously recognized that Amendment 798 was specifically not made retroactive. *United States v. Delrio*, No. 8:14CR378, 2020 WL 1702353, at *2 (D. Neb. Apr. 7, 2020).[5]

Wiig also argues that the Supreme Court's reasoning in *Johnson v. United States*, 576 U.S. 591 (2015), would have eliminated his burglary conviction as a predicate offense under the residual clause of § 4B1.2(a)(2). In *Johnson*, the Supreme Court held that imposing an increased sentence pursuant to the identically worded residual clause of the Armed Career Criminal Act ("ACCA"), 18 U.S.C. § 924(e)(2)(B)(ii), violated due process under the Fifth Amendment. 576 U.S. at 606. The Supreme Court's decision in *Johnson* was given retroactive effect to prisoners sentenced under the ACCA in *Welch v. United States*, 578 U.S. 120, 130 (2016).

Wiig was not sentenced under the ACCA and he cannot seek relief directly under *Johnson*. However, he argues the reasoning in *Johnson* is equally applicable to the residual clause of § 4B1.2(a)(2) in effect at the time of his sentencing, so Johnson's retroactivity should apply equally to sentences under § 4B1.2(a)(2). In support, he cites this Court's decision in *United States v. Beck*, No. 8:13CR62, 2016 WL 3676191 (D. Neb. July 6, 2016). In *Beck*, the Court analyzed whether the decision in *Johnson* was applicable to the

---

[5]*See also* U.S.S.G. § 1B1.10(d) (omitting Amendment 798 from list of retroactive guideline amendments in subsection (d)); *United States v. Adkins*, 883 F.3d 1207, 1212-13 (9th Cir. 2018) (characterizing Amendment 798 as a substantive change to the Guidelines); *United States v. Godin*, 522 F.3d 133, 135 (1st Cir. 2008) (per curiam) ("The Sentencing Commission's decision not to make [an] amendment retroactive means the defendant is not entitled, under the procedure set forth in 18 U.S.C. § 3582(c)(2), to further proceedings in which the district court . . . may choose to adjust the sentence employing the more lenient amendment to calculate the guideline range.").

5

sentencing guidelines career offender enhancement. *Beck*, 2016 WL 3676191 at *5-6. The Court analyzed the split of authority at the time and concluded it agreed "with those courts that have either held or assumed that *Johnson* makes language in § 4B1.2(a)(2) that is identical to that in the ACCA unlawful." *Id*. After analyzing the applicable Nebraska statute, the Court concluded the defendant's state court burglary conviction no longer constituted a "crime of violence" for purposes of § 4B1.1.

Wiig's reliance on *Beck* is misplaced. At the time *Beck* was decided, the Supreme Court had not issued its decision in *Beckles v. United States*, 137 S. Ct. 886 (2017). In *Beckles*, the Supreme Court directly considered whether its decision in *Johnson* also applied to the residual clause of § 4B1.2(a)(2). The Supreme Court concluded that it did not, reasoning that unlike the ACCA, "the advisory Guidelines do not fix the permissible range of sentences." *Id*. at 892. Accordingly, the Guidelines "do not implicate the twin concerns underlying vagueness doctrine—providing notice and preventing arbitrary enforcement." *Id*. at 894. The Court explained that its decision did not shield the Guidelines from "constitutional scrutiny," but that "the advisory Sentencing Guidelines, including [the career offender guideline's] residual clause, are not subject to a challenge under the void-for-vagueness doctrine." *Id*. at 895-96.

Because the Supreme Court in *Beckles* stated that the *Johnson* holding does not apply to career offenders under the Guidelines, *Johnson* is not a change in the law that unquestionably would have benefitted Wiig. Wiig was sentenced after the Supreme Court's decision in *United States v. Booker*, 543 U.S. 220 (2005), so there is no potential argument that the sentencing Court considered the Guidelines mandatory at the time. Moreover, because the reasoning in *Johnson* does directly apply to the former residual clause of § 4B1.2(a)(2), there is no announced "new rule of law," made retroactive to cases on collateral review. *See Winarske v. United States*, 913 F.3d 765, 768 (8th Cir. 2019).

### 2. Nonretroactive Changes are Not Extraordinary and Compelling

None of the asserted changes to the law are retroactively applicable to Wiig. Thus, the Court turns to whether these nonretroactive changes nevertheless constitute extraordinary and compelling reasons for compassionate release. Some courts have concluded that, under certain circumstances, extreme sentencing disparities created by non-retroactive changes in the law can constitute an extraordinary and compelling reason for compassionate release. *See United States v. O'Bryan*, No. 96-10075-03-JTM, 2020 WL 869475, at *2 (D. Kan. Feb. 21, 2020) (finding the fact that the defendant's sentence would have been "radically different" if he were subject to the FSA constituted an extraordinary and compelling reason for release); *United States v. Urkevich*, No. 03-37, 2019 WL 6037391, at *4 (D. Neb. Nov. 14, 2019) (granting compassionate release noting "specifically the injustice of facing a term of incarceration forty years longer than Congress now deems warranted for the crimes committed"). Other courts have concluded non-retroactive changes in the law cannot constitute extraordinary and compelling circumstances. *See United States v. Fox*, No. 2:14-CR-03, 2019 WL 3046086, at *3 (D. Me. July 11, 2019); *see also United States v. Crandall*, No. 89-CR-21, 2020 WL 7080309, at *7 (N.D. Iowa Dec. 3, 2020) (finding "it improper to effectively make non-retroactive changes in the law retroactive by deeming them to be extraordinary and compelling circumstances").

The Court concludes the nonretroactive changes to sentencing laws do not constitute extraordinary and compelling reasons for compassionate release in this case. While the Eighth Circuit has not decided whether a district court may consider nonretroactive changes, it has affirmed a district court's conclusion "that a non-retroactive change in law [does] not support a finding of extraordinary or compelling reasons for release." *United States v. Loggins*, 966 F.3d 891, 893 (8th Cir. 2020); *see also United States v. Saldana*, 807 Fed. App'x 816, 820 (10th Cir. 2020). Additionally, district courts in this circuit have decided that even where changes to § 4B1.2(a)(2) would have disqualified prior burglary convictions as predicate offenses, those changes should not be considered because they

7

were expressly made nonretroactive. *See, e.g., Crandall*, 2020 WL 7080309, at *7; *United States v. Gashe*, No. CR07-4033-LTS, 2020 WL 6276140, at *3 (N.D. Iowa Oct. 26, 2020), *aff'd*, No. 20-3466, 2021 WL 2450585 (8th Cir. Jan. 19, 2021), *cert. denied*, No. 20-8284, 2022 WL 89279 (U.S. Jan. 10, 2022) (concluding that if changes in the law are considered extraordinary and compelling, it "would make virtually every defendant sentenced before the FSA became law eligible for a reduced sentence. This would render the word 'extraordinary' meaningless."). While Wiig may be understandably frustrated that others receive sentencing benefits while he does not, "the compassionate release provision is not an end-run around the Commission's authority to make certain Guideline changes not retroactive or Congress's decision to reduce sentences for some crimes but not others, or a means to redress perceived disparities with other sentenced defendants." *Fox*, 2019 WL 3046086, at *3.[6]

### C. Generalized Concern Over COVID-19

Wiig also argues that his generalized fear of COVID-19 and the general impact of the pandemic on his imprisonment justifies compassionate release. However, "the mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release." *United States v. Raia*, 954 F.3d 594, 597 (3d Cir. 2020). Wiig offers no argument that he is particularly

---

[6]Retroactively applying *Johnson* is also inappropriate in this matter because Wiig already raised this argument before the Court and the Eighth Circuit. A defendant may not use a motion compassionate release to contest the validity or legality of a sentence. *See United States v. Fine*, 982 F.3d 1117, 1118 (8th Cir. 2020); *see also United States v. Logan*, 532 F. Supp. 3d 725, 731-32 (D. Minn. 2021) (concluding that allowing a defendant "to use a compassionate-release request as yet another avenue to attack the legality or validity of a sentence" would nullify rules governing other safeguards intended to prevent incorrect or unjust sentences). In June 2016, Wiig, through counsel, moved for relief under § 2255 (Filing No. 138), arguing that the *Johnson* decision applied to career offenders under § 4B1.1 of the Guidelines. Recognizing that his motion under § 2255 was successive, Wiig simultaneously filed a request with the Eighth Circuit seeking permission to file a successive § 2255 petition. The Eighth Circuit rejected his request (Filing No. 146). Re-examining Wiig's *Johnson* argument on a motion for compassionate release would be inappropriate.

susceptible to the risks associated with COVID-19. While the Court does not minimize the risk COVID-19 poses, especially to the prison population, Wiig's generalized concerns do not present an extraordinary and compelling reason to warrant release.

### D. Efforts at Rehabilitation

Wiig finally argues that release is appropriate because he has had minimal disciplinary problems and has taken several steps toward rehabilitation. A defendant's rehabilitation may be relevant but "is not, by itself, an extraordinary and compelling reason for purposes of [§ 1B1.13]." *Id.* § 1B1.13 cmt. n.3; 28 U.S.C. § 994(t) ("Rehabilitation of the defendant alone shall not be considered an extraordinary and compelling reason."). Although Wiig's efforts are commendable, they do not support compassionate release on their own.

Having carefully reviewed the record in this case, including the § 3553 sentencing factors and the considerations in U.S.S.G. § 1B1.13, the Court finds Wiig has not presented extraordinary or compelling reasons for release. Accordingly, Wiig's Motion for Compassionate Release (Filing No. 153) pursuant to 18 U.S.C. § 3582(c)(1)(A)(i) is denied and Wiig's Motion for Clarification (Filing No. 172) is denied as moot.

IT IS SO ORDERED.

Dated this 24th day of January 2022.

BY THE COURT:

Robert F. Rossiter, Jr.
Chief United States District Judge